**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **JAMES WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:08-01120** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-

1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary

Judgment (Document No. 15.) and the Defendant's Motion for Judgment on the Pleadings.

(Document No. 17.) Both parties have consented in writing to a decision by the United States

Magistrate Judge. (Document Nos. 7 and 8.)

The Plaintiff, James Washington (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on March 2, 2005 (protective filing date), alleging disability as of that date due to

bilateral carpal tunnel syndrome, back pain, pain in his right buttock, and depression. (Tr. at 77, 87-

91, 103-04.) The claim was denied initially and upon reconsideration. (Tr. at 73-76, 77-79, 83-85.)

On October 13, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr.

at 86.) The hearing was held on March 7, 2007, before the Honorable Steven A. DeMonbreum. (Tr.

at 32-72.) By decision dated June 29, 2007, the ALJ determined that Claimant was not entitled to

benefits. (Tr. at 15-29.) The ALJ's decision became the final decision of the Commissioner on August 15, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) On September 24, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the

degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, March 2, 2005. (Tr. at 20, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from bilateral carpal tunnel syndrome status post release and an L5/S1 disc herniation status post microdiskectomy, which were severe impairments. (Tr. at 20, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, as follows:

> [T]he claimant has the residual functional capacity to perform light work, which entails lifting up to 20 pounds, frequent lifting of up to 10 pounds, and standing/walking for up to six hours in an eight hour work day. The claimant's ability to push and pull is unlimited, except as required to meet the above cited lifting/carrying capacities. From a postural standpoint, the claimant would be unable to climb ladders, ropes or scaffolds, but he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl. From a manipulative standpoint, the claimant

has limited feeling in his fingertips, but he has unlimited capacity to reach, handle (gross manipulation) and finger (fine manipulation). From an environmental standpoint, the claimant would have to avoid concentrated exposure to extreme cold or to vibration; otherwise, his capacity for exposure to environmental conditions is unlimited.

(Tr. at 23, Finding No. 5.) At step four, the ALJ found that Claimant could return to his past relevant work as a restaurant shift manager and waiter. (Tr. at 28, Finding No. 6.) On this basis, benefits were denied. (Tr. at 29, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on November 10, 1967, and was 39 years old at the time of the

6

administrative hearing, March 7, 2007. (Tr. at 39, 87.) Claimant had a high school education. (Tr. at 39, 109.) In the past, he worked as a pizza shift manager, warehouse worker, forklift operator, cook, and kitchen worker. (Tr. at 39-43, 56-60, 104-05, 111-18.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the ALJ erred in assessing his residual functional capacity ("RFC") when he found that Claimant had unlimited capacity to reach, handle, and finger, and had no work-related mental limitations. (Document No. 16 at 8-11, 11-15.) Claimant next alleges that the ALJ failed to accord proper weight to the opinion of Dr. Riaz, an examining psychiatrist, and placed too much reliance on the opinions of Timothy Saar, Ph.D., and Debra Lilly, Ph.D., state agency psychologists. (Id. at 15-18.) Finally, Claimant alleges that remand is warranted to consider additional treatment notes from Dr. Riaz that were submitted to the Appeals Council. (Id. at 18-20.)

Regarding the ALJ's RFC assessment, the Commissioner asserts that the ALJ properly found, as was consistent with the medical evidence, that Claimant had an unlimited ability to reach and handle, and an unlimited capacity to finger. (Document No. 17 at 10-11.) The Commissioner further asserts that the ALJ correctly found that Claimant did not have a severe mental impairment that imposed more than a minimal effect on his ability to function for a continuous period of twelve months or more. (Id. at 12.) With respect to the opinion of Dr. Riaz, the Commissioner asserts that the ALJ properly found that in the absence of a physical examination or review of Claimant's medical records, Dr. Riaz's opinion was based on Claimant's subjective complaints, and therefore,

was entitled little weight. (Id. at 13.) Additionally, the Commissioner notes that Dr. Riaz's opinion that Claimant's attention and concentration was poor was inconsistent with and unsupported by his own testing and mental exercises, which required attention and concentration. (Id.) The Commissioner asserts that pursuant to 20 C.F.R. §§ 404.1527(f) and 416.927(f), the ALJ was permitted to consider the opinions of the qualified non-examining state agency physicians. (Id. at 13-14.) With respect to the alleged new evidence, the Commissioner asserts that the additional medical records merely confirm Claimant's diagnosis and treatment with medication, do not show that Claimant's depression was a severe impairment that met the durational requirements under the Social Security Act, and therefore, do not warrant further consideration on remand. (Id. at 14.)

Analysis.

1. Residual Functional Capacity Assessment.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In

8

determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

    A. Carpal Tunnel Syndrome.

    Claimant first alleges that the ALJ erred in failing to assess any limitations in reaching, handling, and fingering, despite finding at step two of the sequential analysis that he had severe bilateral carpal tunnel syndrome ("CTS"). (Document No. 16 at 8-11.) Claimant contends that his testimony and the medical evidence, together with the ALJ's step two finding, demonstrated the necessity of limitations resulting from his CTS. (Id.) Specifically, Claimant testified that his fingers were numb, that he could not feel a cigarette if he picked it up, and that it was difficult to work with his hands or to pick up anything. (Id. at 8.) He testified that following his second carpal tunnel release, he continued to experience numbness in both hands, that his fingers would cramp if he wrote a letter, and that he had difficulty gripping. (Id.) Claimant further recounts the medical evidence, particularly that of Drs. Greenberg, Rana, O'Saile, Peters, Yadav, and Chand, and asserts that even following his surgeries on both hands, the evidence demonstrated continued pain, tingling, and numbness. (Id. at 9-10.)

    The Commissioner asserts that Claimant's CTS was repaired with surgery and that he "retained sufficient upper extremity functioning to perform his past work as a restaurant shift manager and a waiter." (Document No. 17 at 10.) Following Claimant's right carpal tunnel release surgery in September, 2004, the Commissioner asserts that MRI evidence revealed that the median nerve root was decompressed and confirmed Dr. O'Saile's opinion that the surgery was successful.

(Id.) He notes that Dr. O'Saile placed no restrictions on Claimant's activity. (Id.) The Commissioner asserts that an evaluation by Dr. Craft in August, 2006, demonstrated that Claimant's hand functioning improved as he exhibited full range of motion, intact grip strength, and intact fine manipulation. (Id.) The Commissioner further asserts that following Claimant's left carpal tunnel release surgery in September, 2006, Claimant exhibited good wrist motion. (Id. at 11.)

The medical evidence demonstrates that Claimant underwent open right carpal tunnel release on December 27, 2004, by Dr. Steven B. O'Saile, D.O. (Tr. at 204-05.) On January 11, 2005, Dr. O'Saile noted on a post-op visit that Claimant's numbness was completely gone, though he had occasional trembling in the muscles in the upper arm. (Tr. at 250.) Dr. O'Saile noted that the trembling may have been vesiculations in recovery due to the severe nature of the CTS and should resolve. (Id.) On February 15, 2005, Claimant again reported that the numbness completely was resolved, but complained of pain in the hand primarily. (Tr. at 249.) He also complained of occasional shooting pain into the forearm, volar aspect. (Id.) On exam, Claimant exhibited good sensation and muscular development, grip strength of 4/5 with a questionable amount of effort, full range of motion with limitations at the extreme due to subjective discomfort, and intact neurovascular status. (Id.) Dr. O'Saile diagnosed right hand CTS, severe, status post release with nerve regeneration pain and encouraged physical therapy. (Id.)

Claimant requested an MRI, which was conducted on February 20, 2005, and revealed no suspicious findings. (Tr. at 212, 250.) Claimant also requested an injection in the arm for pain. (Tr. at 248.) Dr. O'Saile explained that severe compression of the nerves took a period of time to recover due to the severity and the duration of the compression. (Id.) Claimant however, did not agree with Dr. O'Saile's assessment or the results of the MRI and Dr. O'Saile advised that he would refer him

back to his family doctor for referral to someone for residual pain. (Id.) Claimant returned to his family doctor, Dr. Peters, nearly ten months later, on December 5, 2005. (Tr. at 344.) Nevertheless, Claimant failed to report any complaints associated with his CTS. (Id.) On January 31, 2006, Claimant reported that his CTS symptoms had returned and Dr. Peters referred him to Dr. Rana for a second opinion. (Tr. at 343.) On March 9, 2006, Dr. Peters noted that an EMG showed CTS, but the medical evidence does not contain the actual EMG report. (Tr. at 341.)

On May 12, 2006, Dr. Rafael Gomez, M.D., a reviewing state agency consultant, affirmed a physical RFC assessment of James K. Egnor II, who opined that Claimant was limited in his ability to feel. (Tr. at 256.)

On June 10, 2006, Claimant sought emergency room treatment for left arm and shoulder pain. (Tr. at 346.) Nerve conduction studies on June 28, 2006, revealed moderate left CTS. (Tr. at 305.) Also on June 28, 2006, Dr. Craft conducted a consultative evaluation, during which he noted Claimant's complaints of stabbing pain, tingling, and numbness over both hands. (Tr. at 312.) Examination however, revealed intact grip strength and fine manipulation, as well as full motor power of the upper extremities. (Tr. at 313-14.) Sensation to pinprick was diminished over the left hand. (Tr. at 314.) Dr. Craft observed that Claimant was able to grasp a doorknob and open a door with each hand without difficulty; could pick up a paperclip, coin, and pen from the table with each hand without difficulty; and could write his name. (Id.)

On September 13, 2006, Claimant therefore, underwent left endoscopic carpal tunnel release by Yogesh Chand, M.D., a board certified orthopedic surgeon. (Tr. at 350.) At a follow-up visit with Dr. Peters on December 8, 2006, Claimant wore a brace on his left wrist, had good range of motion, and reported subjective pain with range of motion. (Tr. at 351.)

11

The ALJ summarized the medical and opinion evidence of record and determined that Claimant had unlimited capacity to reach, handle, and finger. (Tr. at 23, 26-28.) Based on the foregoing evidence, the undersigned finds that the ALJ's decision is supported by substantial evidence. Though Claimant continued to experience some pain and numbness following surgery for his CTS, the evidence fails to establish any functional limitations resulting therefrom. Dr. Craft's examination is most revealing and demonstrated that Claimant was able to use his hands and fingers for gross and fine manipulation. Though two state agency consultants opined that Claimant's ability to feel was limited, the undersigned finds that the ALJ properly based his decision on Dr. Craft's evaluation that it was not. Thus, while it may have been error for the ALJ not to have discussed specifically the findings of these state agency consultants, the undersigned finds that in view of the totality of the evidence, such error was harmless. Accordingly, the undersigned finds that Claimant's argument is without merit and that the ALJ's RFC assessment in this regard is supported by substantial evidence.

    B. <u>Mental Impairments</u>.

Second, Claimant alleges that the ALJ erred in assessing his RFC when he failed to find that Claimant had severe mental impairments that resulted in work-related mental limitations. (Document No. 16 at 11-15.) Claimant asserts that the medical evidence demonstrates that he suffered from anxiety, insomnia, and depression. (<u>Id.</u> at 11.) He notes the consultative examinations by Tonya McFadden and Tammie L. Smith as support of her conditions. (<u>Id.</u> at 11-12.) He also notes that he underwent psychiatric treatment by Dr. George Ide, but that Dr. Ide's records could not be obtained. (<u>Id.</u> at 12.) Furthermore, after the administrative hearing, Claimant asserts that he underwent a psychiatric evaluation by Dr. Riaz, which indicated a GAF of 48. (<u>Id.</u> at 14.)

12

The Commissioner asserts that the ALJ correctly found that Claimant did not have a severe mental impairment because the evidence of "record did not demonstrate depression that imposed more than a minimal effect on his ability to function for a continuous period of twelve months or more, as required under the regulations." (Document No. 17 at 12.) Specifically, the Commissioner asserts that the ALJ properly found that Claimant did not have a history of mental health treatment by a mental health professional for a significant period of time relevant to his claim. (Id.) Though Dr. Peters prescribed an antidepressant medication, she was not a mental health professional and did not refer Claimant to such a professional until December, 2006. (Id.) The Commissioner also asserts that despite Claimant's reported six-month history of mental health treatment by Dr. Ide, his records were not available for consideration by the ALJ. (Id.) The Commissioner further asserts that the evaluations of Ms. McFadden and Ms. Smith did not support a finding of a severe mental impairment. (Id. at 12-13.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2007). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."

13

Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The medical evidence reveals that Tonya McFadden, M.A., conducted a mental status examination of Claimant on July 17, 2005. (Tr. at 261-66.) Claimant reported a two year history of depression since his father's death. (Tr. at 262.) He also reported insomnia, crying episodes twice a week, decreased energy and appetite, memory impairment, and feelings of helplessness. (Id.) A mental status exam revealed a mildly depressed mood, a restricted affect, mildly deficient concentration, and a markedly deficient recent memory, but normal thought processes, fair insight, intact judgment, normal immediate and remote memories, and normal persistence and pace. (Tr. at 264.) Ms. McFadden diagnosed major depressive disorder, single episode, without psychotic features and opined that his prognosis was fair with appropriate treatment. (Tr. at 265.)

One year later, on July 23, 2006, Tammie L. Smith, M.A., conducted another mental status examination. (Tr. at 306-11.) Ms. Smith noted Claimant's reports of depression and grief issues following the death of his father. (Tr. at 307.) Claimant reported that he saw a psychiatrist, Dr. Ide, but that he had moved and was not receiving any treatment. (Tr. at 308.) Mental status exam revealed a dysphoric mood and flat affect, psychomotor retardation, a history of suicidal ideations without plan, mildly deficient immediate and remote memories, a severely deficient recent memory, mildly deficient concentration, limited insight, but normal thought processes, average judgment, and normal concentration and pace. (Tr. at 309-10.) Ms. Smith diagnosed major depressive disorder,

14

single episode, moderate and opined that Claimant's prognosis was guarded with psychiatric and medical follow-up recommended. (Tr. at 310.)

On March 13, 2007, following the administrative hearing, Claimant underwent a psychiatric evaluation by Dr. Riaz Uddin Riaz, M.D., to determine eligibility for a medical card. (Tr. at 356-59.) Dr. Riaz noted Claimant's reports that he was nervous, anxious, depressed, irritable, preferred to be left alone, and had mood swings. (Tr. at 356.) Dr. Riaz indicated that Claimant could not concentrate, had difficulty in crowds of people, had severe psychomotor retardation, appeared depressed and anxious, and wringed his hands during the interview. (Tr. at 357.) He also indicated that Claimant's mood was depressed, irritable, and anxious; his affect was constricted; and his speech was non-spontaneous. (Tr. at 358.) He noted that Claimant felt worthless, hopeless, and useless all the time and that he felt that people talked about and watched him. (Id.) However, he also noted that Claimant was fully oriented, had no difficulty in abstract thinking, was able to name the current President and one previous President, was able to do four of four steps of the serial sevens, was able to repeat five digits forward and three digits backward, that his recent memory was fair and remote memory was good, that his attention and concentration were poor, that his insight was not present but his judgment was present. (Id.) Dr. Riaz diagnosed bipolar disorder with depressed mood and assessed a GAF of 48. (Id.) Dr. Riaz opined that based on a combination of Claimant's physical and emotional problems, he was rendered incapable of gainful employment. (Id.) He further opined that Claimant was incapable of interacting appropriately with co-workers and supervisors and performing repetitive tasks at a sustained level. (Id.)

The ALJ found that the two psychological consultative examiners' findings did not demonstrate that Claimant's depression imposed more than a minimal effect on his ability to

function. (Tr. at 21.) Though Claimant's recent memory was markedly deficient, his concentration was at most mildly deficient, and his persistence and pace were within normal limits. (Id.) The ALJ further found that Claimant had at most mild restrictions on his activities of daily living, social functioning, concentration, persistence, and pace. (Tr. at 22.) He also found that there were no episodes of decompensation found in the record. (Id.) Based on the foregoing evidence, and the opinion evidence, which will be discussed below, the undersigned finds that the ALJ's decision that Claimant's mental impairments were not severe is supported by substantial evidence because there is no indication in the record of significant functional limitations. Ms. Smith and Ms. McFadden diagnosed only a single episode of major depression with minimal positive findings on mental status exam. Furthermore, there is no indication that Claimant had any limitations to be accommodated in his RFC. Accordingly, the undersigned finds that the ALJ's decision in these regards is supported by substantial evidence and that Claimant's arguments are without merit.

  2. Medical Source Opinions.

Claimant next alleges that the ALJ erred in failing to accord greater weight to the opinion of Dr. Riaz. (Document No. 16 at 15-17.) Claimant asserts that "[h]ad proper weight been accorded to the opinion of Dr. Riaz, a finding of disability could have been reached." (Id. at 15.) Claimant asserts that the ALJ placed too much weight on the opinions of the non-examining, reviewing state agency psychologists. (Id.) He notes that Dr. Riaz is the only examining physician of record to offer an opinion regarding Claimant's work-related mental limitations, and therefore, his opinion should have been given greater weight than the opinions of the non-examining state agency consultants. (Id. at 16.) He further notes that Dr. Riaz is a specialist in the field of psychiatry. (Id. at 17.)

The Commissioner asserts that the ALJ properly determined that the opinion of disability

is reserved to the Commissioner. (Document No. 17 at 13.) He further asserts that the ALJ properly found that Dr. Riaz based his opinion on both Claimant's physical and emotional problems, but had neither performed a physical exam of Claimant nor reviewed the medical records. (Id.) Therefore, the Commissioner asserts that the ALJ was constrained to find that Dr. Riaz's opinion was based on Claimant's subjective complaints regarding his physical impairments. (Id.) Furthermore, Dr. Riaz's opinion that Claimant's attention and concentration were poor was inconsistent with his own testing in which Claimant was able to perform a series of mental exercises that required attention and concentration. (Id.) To the extent that the ALJ relied on the opinions of the reviewing state agency psychologists, the Commissioner asserts that the regulations permitted the ALJ to rely on the opinions of the highly qualified consultants. (Id. at 13-14.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by

competent medical evidence, the physical and mental activity that the claimant can perform in a

work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater,

94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the

Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence,
> including opinions, on the nature and severity of your impairment(s). Although we
> consider opinions from medical sources on issues such as whether your
> impairment(s) meets or equals the requirements of any impairment(s) in the Listing
> of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual
> functional capacity . . . or the application of vocational factors, the final
> responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2007).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as
> a claimant's own statement of what he or she is able or unable to do.  That is, the
> SSA need not accept only physicians' opinions.  In fact, if conflicting medical
> evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in

the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2));

rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and

416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special

significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§

404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the

Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your

residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20

18

C.F.R. §§ 404.1545 and 416.946 (2007). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s) made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

19

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2007). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924

20

F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The ALJ summarized the evaluation and opinion of Dr. Riaz and accorded his opinion that Claimant was incapable of gainful employment very little weight. (Tr. at 21.) The ALJ noted that Claimant was sent to Dr. Riaz for a one-time evaluation after the administrative hearing. (Id.) The ALJ found that Dr. Riaz's opinion regarding Claimant's inability to work was an issue reserved to the Commissioner. (Id.) He noted however, that Dr. Riaz did not perform a physical exam or review the medical records. (Id.) Dr. Riaz did perform testing, as discussed above, which Claimant successfully completed. (Tr. at 22.) Nevertheless, Dr. Riaz opined that Claimant's attention and concentration were poor. (Id.) Furthermore, the ALJ noted that Dr. Riaz recommended follow-up mental treatment but no records were submitted. (Id.) The ALJ therefore accorded greater weight to the opinions of the state agency reviewing psychologists, who found that Claimant had no severe mental impairments. (Tr. at 22, 289-302, 318-31.)

As the Commissioner points out, the ALJ was permitted to consider the opinions of the qualified non-examining reviewing state agency consultants, whose opinions were consistent with the overall medical record. See 20 C.F.R. §§ 404.1527(f), 416.927(f). The undersigned finds that the ALJ's decision to give little weight to the opinion of Dr. Riaz is supported by substantial evidence. Though Dr. Riaz opined that Claimant was incapable of working, such an opinion goes to an ultimate issue reserved to the Commissioner. In any event, Dr. Riaz's opinion was grounded in part on physical subjective complaints, despite mental testing that Claimant successfully completed. Accordingly, the undersigned finds that the ALJ adequately explained his reasons for giving little credit to the opinions of Dr. Riaz, that his decision was made pursuant to the controlling law and regulations, and therefore, is supported by substantial evidence.

3. New Evidence to the Appeals Council.

Finally, Claimant alleges that the evidence submitted to the Appeals Council warrants remand. (Document No. 16 at 17-20.) Claimant asserts that he submitted treatment notes from Dr. Riaz from May 11, 2007, through August 17, 2007, to the Appeals Council, which indicated that Claimant suffered from panic disorder, bipolar disorder, restricted affect, depression, anxiety, sadness, mood swings, apprehensiveness, panic attacks, lack of insight, vivid dreams, poor frustration tolerance, and sleep disturbance. (Id. at 17-18.) He asserts that the evidence is new because it was not before the ALJ at the time he rendered his decision and that it is material because it reveals the severity of Claimant's condition at the time of Claimant's decision. (Id. at 18.) Claimant further asserts that the records prove that Claimant continued with follow-up mental health treatment despite the ALJ's statement to the contrary. (Id.) Consequently, Claimant contends that the records may have made a difference had the ALJ had access to them. (Id. at 19.) Finally,

Claimant asserts that because the treatment was received after the hearing and shortly before the ALJ's decision, there was good cause for not submitting previously the records. (Id.)

The Commissioner asserts that the records actually are prescriptions for medications and reports of three office visits, only two of which pertain to the relevant time period of Claimant's claim. (Document No. 17 at 14.) Even those two reports however, would not have changed the ALJ's decision because they merely confirmed Claimant's diagnosis and treatment with medication. (Id.) The Commissioner further asserts that the reports also do not demonstrate that Claimant's depression was a severe impairment, but essentially show that Claimant had depression that warranted treatment by medication. (Id.) Accordingly, the Commissioner contends that remand is not warranted for further consideration of two treatment notes. (Id.)

In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(en banc)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.  The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered unless the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. §§ 404.1570(b); 404.970(b) (2007). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D. W.Va. May 5, 2003).

23

The Appeals Council incorporated the additional records into the administrative record, but determined that the information did not provide a basis for changing the ALJ's decision. (Tr. at 5-6.) Because the Appeals Council specifically incorporated the evidence from Dr. Riaz into the administrative record, the Court must review the record as a whole, including the additional evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

The Appeals Council considered Mr. Williams's report but found no basis for changing the ALJ's decision. The undersigned agrees with the Appeals Council's decision that the additional evidence provides no basis for changing the ALJ's decision. As the Commissioner points out, the evidence from Dr. Riaz consists of prescriptions and treatment notes from May 11, 2007, through August 17, 2007. (Tr. at 377-82.) Only the treatment notes from May 11 and June 8, 2007, are relevant to the time period of Claimant's claim. (Tr. at 379, 381.) On May 11, 2007, Dr. Riaz noted that Claimant's speech was normal and non-spontaneous, his affect was restricted, and his mood was depressed, anxious, sad, and accompanied by mood swings. (Tr. at 381.) He indicated that Claimant had no delusions, hallucinations, or suicidal or homicidal ideations. (Id.) Claimant reported occasional panic attacks and Dr. Riaz noted that Claimant was fidgety. (Id.) He further noted that Claimant was oriented, had fair attention and concentration, and that his judgment was present but that his insight was not. (Id.) Dr. Riaz diagnosed bipolar disorder and prescribed Lexapro 10mg. (Id.) Claimant's mental status exam on June 8, 2007, essentially remained unchanged and Dr. Riaz prescribed Lamictal and Xanax and rated Claimant's medication effectiveness at a five out of ten. (Tr. at 378.)

Based on the foregoing, the undersigned finds that the additional evidence is not likely to

24

change the ALJ's decision. There is no indication that Claimant's mental impairments were more severe than the evidence before the ALJ indicated. Consequently, the additional evidence is not material. Accordingly, the undersigned finds that remand for consideration of Dr. Riaz's treatment notes is not warranted and that Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 15.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 17.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge

25